MUNICIPALITY — AUTHORITY TO ZONE
A municipality or city pursuant to authority granted to it by virtue of 11 O.S. 401 [11-401] (1971), and as construed by the Oklahoma Supreme Court clearly has a plenary authority to regulate the use of property within its limits. The zoning, as a unit, of an area in excess of one legally platted lot is not per se unconstitutional. There is no statutory authority for the assessed valuation of a particular tract of listed property to be reassessed solely because of a change in zoning. It is the mandatory duty of the County Assessor to continually adjust and correct such assessed valuations to reflect the value of the property as defined in Article X, Section 8 of the Oklahoma Constitution, as amended, and 68 O.S. 2427 [68-2427](b) (1971). Assessed valuations for individual tracts of property as determined by the County Assessor in accordance with Article X, Section 8 of the Oklahoma Constitution and 68 O.S. 2427 [68-2427](b) (1971) are to be properly applied to the respective tracts of property listed by the County Assessor. The Attorney General is in receipt of your letter wherein you, in effect, ask the following questions relative to zoning: 1. Does a city have the authority to zone a residential neighborhood for apartment house use? 2. Is "blanket zoning" constitutional? 3. Does the County Assessor have the authority to increase the assessed valuation according to or pursuant to a change in zoning? 4. Can increased assessed valuation be applied to both single family residences and apartments? With regard to your first question 11 O.S. 401 [11-401] (1971) provides: "For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of cities and incorporated villages is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes." In construing the power granted to the municipalities by virtue of Section 401, supra, the Oklahoma Supreme Court stated in Beveridge v. Harper Turner Oil Trust, Okl. 35 P.2d 435 (1934): "The municipalities of this State have been specifically clothed with the power to zone by legislative enactment." Therefore, it is the opinion of the Attorney General that your first question be answered as follows: A municipality or city pursuant to authority granted to it by virtue of 11 O.S. 401 [11-401] (1971), and as construed by the Oklahoma Supreme Court, clearly has a plenary authority to regulate the use of property within its limits. In your second question you ask whether so-called "blanket zoning" is constitutional. By the use of the phrase "blanket zoning", it is assumed that you mean the zoning, as a unit, of an area larger than one legally platted lot. With regard to this type of zoning, 101 C.J.S., Zoning, 31, states: "It is generally the rule that zoning must be by districts, and not by individual pieces of property or by blocks; and a zoning regulation may and should divide the municipality into districts of such number, shape, and area as may be best suited to carry out the zoning purposes." In regard to the zoning of areas larger than one legally platted lot, the Statutes of Oklahoma, Title 11 O.S. 402 [11-402] (1971), provide: "For any or all of said purposes, the local legislative body may divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this act; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of building throughout each district, but the regulations in one district may differ from those in other districts. . . ." While the zoning of areas larger than one legally platted lot has been authorized by the laws of this State, it must be pointed out that substantive due process must be observed and that individual cases may be presented for judicial determination as to whether the due process requirements were observed in regard to the zoning of any particular piece of property. Where the validity of a particular zoning ordinance is questioned, the test to be applied by the courts is whether such ordinance is an arbitrary, unreasonable and capricious exercise of the police power of the municipality. Oklahoma City v. Barclay, Okl., 359 P.2d 237. It is, therefore, the opinion of the Attorney General, that, your second question be answered as follows: The zoning of an area larger than one legally platted lot, is not per se unconstitutional. The choice of whether zoning will be accomplished on individual platted lots, or whether a particular zoning requirement will be applied to an area larger than one legally platted lot, is a question for the governing body of the particular city or town enacting the zoning requirements, subject to judicial determination of due process questions raised by individual property owners. In your third question you ask whether the County Assessor has the authority to increase an assessed valuation pursuant to a zoning change for a piece of property. The relevant provisions of the Oklahoma law, namely 68 O.S. 2401 [68-2401] (1971), et seq., as well as Article X, Section 8, et seq., of the Oklahoma Constitution, do not provide for a reassessment of property valuations when zoning is changed. However, 68 O.S. 2427 [68-2427](b) (1971) provides: "All taxable real property shall be assessed annually, at not to exceed thirty-five percent (35%) of its fair cash value, estimated at the price it would bring at a fair voluntary sale, as of the first day of January of each year, but need not be listed with the county assessor." Thus, it is the duty of the County Assessor to list and assess all property yearly at a value or price it would bring at a fair voluntary sale as of January 1st of each year. Such was the holding of Attorney General's Opinion No. 69-187. Further, 68 O.S. 2436 [68-2436](d) (1971) provides: "When the valuation of the real estate of each county has been completed, as contemplated and required by this Section, it shall be the mandatory duty of the County Assessor and each of his successors in office, to continuously maintain, revise and correct the records relating thereto, and to continuously adjust and correct assessed valuations in conformity therewith." In addition, 68 O.S. 2481.1 [68-2481.1] (1971) provides in relevant part: "Each county assessor shall commence, . . . a comprehensive program of revaluation of all taxable property within his respective county. Such program shall progress at a rate which will result in the revaluation of all taxable property within the county before January 1, 1972. Each assessor shall thereafter maintain an active and systematic program of revaluation on a continuous basis, and shall establish a revaluation schedule which will result in revaluation of all taxable property within the county at least once each five (5) years. . . ." Therefore, it is the opinion of the Attorney General that your third question be answered in the negative. There is no statutory authority for the assessed valuation of a particular property to be reassessed solely because of a change in zoning. However, it is the mandatory duty of the County Assessor to continually adjust and correct such assessed valuations to reflect the valuation of the property as defined in Article X, Section 8 of the Oklahoma Constitution, as amended, and 68 O.S. 2427 [68-2427](b) (1971). In your fourth question you asked whether an increased assessed valuation may be applied to both single-family residences and apartments. As previously noted, it is the duty of each County Assessor to continuously correct and adjust the valuation of each individually listed piece of property within his jurisdictions. As a part of his revaluation or reassessment the County Assessor determines the value of each individual tract of property listed in accordance with the guidelines contained in Article X, Section 8 of the Oklahoma Constitution, and 68 O.S. 2427 [68-2427](b) (1971). The new amendment to Article X, Section 8 of the Oklahoma Constitution provides in relevant part that: "All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale, except real property and tangible personal property shall not be assessed for taxation at more than thirty-five percent (35%) of its fair cash value, estimated at the price it would bring at a fair voluntary sale. Provided, however, that no real property shall be assessed for ad valorem taxation at a value greater than thirty-five percent (35%) of its fair cash value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made. Provided, further, that the transfer of property without a change in its use classification shall not require a reassessment based exclusively upon the sale value of such property." As contained in the new provision, assessed valuations are now based upon the price for which property would sell at a fair voluntary sale at the highest and best use for which the property was actually used. Once the assessed valuation for each particular piece of property is individually determined, then this assessment is properly applied to the property in question. Therefore, it is the opinion of the Attorney General that your fourth question be answered as follows: Those assessed valuations of individual tracts of property as determined by the County Assessor in accordance with Article X, Section 8 of the Oklahoma Constitution, and 68 O.S. 2427 [68-2427](b) (1971) are to be properly applied to the respective individual tracts of listed property by the County Assessor. (Steven E. Moore)